F. TRAVIS BUCHANAN, ESQ., & ASSOCIATES, PLLC
F. TRAVIS BUCHANAN, Esq.
Nevada Bar No. 9371
701 East Bridger Ave., Suite 540
Las Vegas Nevada 89101
Tel: (702) 331-5478
Fax: (702) 629-6919
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| EMILY HALL, | ) |
| | ) **CASE NO.: 2:20-cv-00772** |
| | ) |
| Plaintiff, | ) **COMPLAINT** |
| | ) |
| vs. | ) **JURY TRIAL DEMANDED** |
| | ) |
| PRESTIGE TRAVEL & CRUISES, a | ) |
| Corporation licensed to do business in Nevada; | ) |
| DOES I-X, inclusive, and ROE ENTITIES I- | ) |
| X, inclusive, | ) |
| | ) |
| Defendants. | ) |
| ———————————————————— | ) |

## PLAINTIFF'S COMPLAINT

Plaintiff EMILY HALL (hereinafter referred to as "Plaintiff" or "Ms. Hall"), by and through her counsel, F. Travis Buchanan, Esq., of F. TRAVIS BUCHANAN, ESQ., & ASSOCIATES, PLLC, for her Complaint against Defendants PRESTIGE TRAVEL & CRUISES (hereinafter "Defendants" or "Prestige Travel"), alleges and states as follows:

### I.
### VENUE AND JURISDICTION

1. This is an action under the American with Disabilities Act of 1990 (hereafter "ADA", as

1

amended, 42 U.S.C. §12111, *et seq.,* (codified as amended in sections of 42 U.S.C.); Nevada Revised Statutes §613.330, the Family Medical Leave Act, as amended, 29 U.S.C. 2601, *et seq.,* 29 U.S.C. 2601, *et seq.,* (hereafter "FMLA"), and other federal and Nevada state statutes prohibiting discrimination and/or retaliation by employers, against employees who engage in protected activities under various federal and state anti-discrimination statutes.

2.   The unlawful conduct and employment discrimination issues alleged herein occurred in the County of Clark, State of Nevada, and all of the employment practices alleged to be unlawful in this matter, were committed within the jurisdiction of the United States District Court, District of Nevada.

3.   Jurisdiction in this case is also proper pursuant to N.R.S. Section 14.065.

4.   Venue is proper in the District of Nevada pursuant to 28 U.S.C. § 1391(b), because Defendant Prestige Travel, upon information and belief is a business entity that is licensed to conduct business in the State of Nevada and resides and/or operates from the address of 6175 Spring Mountain Road, Las Vegas, Nevada 89146, which is in this judicial district, and within its unofficial Southern Judicial District, and all relevant events giving rise to the claims stated herein occurred in this judicial district.

5.   Plaintiff filed her Charge of Discrimination with the U.S. Equal Opportunity Commission ("EEOC") and was issued a **"Right to Sue"** letter by such agency, a copy of such letter is attached hereto as **Exhibit "1,"** and dated **February 5, 2020.** This Complaint has been timely filed, and therefore, the Plaintiff has fulfilled all jurisdictional prerequisites to filing the instant lawsuit.

/ / /

/ / /

2

# II.
## PARTIES

6.   At all relevant times, Plaintiff Emily Hall was employed by Defendants Prestige Travel in Clark County, Nevada and was during all relevant times a resident of Clark County, Nevada.

7.   Defendant Prestige Travel is a private-sector employer/travel company, that at all times relevant to this lawsuit, had 15 and/or 50 or more employees in 20 or more workweeks during the year of the allegations set forth herein and/or during the preceding calendar year of the allegations set forth in this lawsuit, as such Defendant Prestige Travel is a covered employer under the ADA, as amended, NRS 613.330, and the FMLA.

8.   Up to the date of her unlawful termination on April 18, 2019, Plaintiff had been employed by Defendant Prestige Travel as a Customer Service Supervisor in Las Vegas, Nevada for over 6 months, after having been promoted from the Air Agent position she held upon first being hired by the company on or about January 22, 2018.

9.   DOES I through X, inclusive, ("DOES I-X") and ROE CORPORATIONS, I through X, ("ROE CORPORATIONS I-X") inclusive, are persons, corporations or entities who are or may also be responsible for or who directed or assisted in the wrongful actions of the named Defendants or who may be individual officers, employees or agents of the named Defendant. The true identities of the DOES, I-X, and ROE ENTITIES I-X are unknown to Plaintiff currently.  Plaintiff therefore alleges that DOES I-X and ROE ENTITIES I-X, are and/or may be responsible in part for the damages or injuries suffered by Plaintiff as a result of their wrongful actions and/or those of their agents and/or employees. Plaintiff will seek leave to amend this Complaint as soon as the true identities of DOES I-X and ROE ENTITIES, inclusive, are revealed to Plaintiff.

10.  At all times relevant hereto, all Defendants were jointly and severally liable and responsible for the Plaintiffs' herein complained of injuries and were jointly and severally liable and the direct and proximate cause of the aforesaid complained of injuries.

### III.
### GENERAL ALLEGATIONS

11.  On or about January 22, 2018, Plaintiff was hired by Defendants Prestige Travel as an Air Agent, wherein she worked full time at 8 hours per day and 5 days a week. As an Air Agent Plaintiff's duties and responsibilities included: Providing customer support for domestic and international air travel with cruise packages, processing air travel inquiries for American Express Gold members, updating passenger name records and airline records to comply with TSA guidelines, ticketing activities (issuance, returns and exchanges), monitoring queue for escalated discrepancies, and processing air schedule changes and air confirmations.

12. Due to her successful performance as an Air Agent, Plaintiff was promoted to the position of Customer Service Supervisor on or about October 1, 2018.  In her promoted position, Plaintiff's duties and responsibilities included, supervising a staff of approximately 10 customer service representatives and ensuring they delivered the highest standard of customer service, handling payroll, sales reports, resolving customer escalations, recording employee attendance and other related functions within the company's cruise call center, customer service department.

13. Plaintiff has suffered from chronic and debilitating hemiplegic migraine headaches, since 2012, and shortly after hiring on with the company, in or about January of 2018, she notified the company, by and through her supervisors of her medical issues stemming from such chronic medical condition.

14. Upon notifying her supervisors of her medical issues stemming from her chronic and sometimes debilitating hemiplegic migraine headaches, when needed, Plaintiff's supervisors would routinely allow her to snack or eat meals at her desk and/or assigned workstation.

15. Due to her disclosed chronic and debilitating hemiplegic migraine headaches, when

needed, Plaintiff's supervisors would also allow her to change her work schedule, such that she could attend her medical appointments early in the mornings, and come in to work after her appointments, without being penalized with negative attendance points under the company's attendance policy for doing so.

16. Based on Plaintiff's personal knowledge as a supervisor within the company, of Defendant's policies and practices with respect to its attendance policy, absences resulting from medical emergencies and/or serious medical conditions that were reported to management, were deemed to be excused absences, and not violative of the company's strict attendance points policy.

17. On or about March 26, 2019, through April 1, 2019, Plaintiff was hospitalized after being incapacitated from having suffered from a sudden, blinding pain in her brain. After being examined at Dignity Hospital/ER St. Rose on March 26, 2019, and undergoing a battery of tests during her hospital admissions at UMC Hospital on March 27, 2019, Plaintiff was diagnosed with having a narrow carotid artery in her brain. During this same time period, Plaintiff was transferred and also received treatment at both Spring Valley Hospital and Kindred Rehabilitation Hospital.

18. In light of Plaintiff's fragile medical status and continuing need to remain hospitalized, Plaintiff's mother contacted Defendant's Human Resources Director – Kris Hagen and Plaintiff's Supervisors, including her Call Center Director to apprise them all of Plaintiff's hospitalization and provide them with updates regarding Plaintiff's medical condition and status.

19. During her hospitalization Defendants provided Plaintiff with FMLA paperwork to have hospital staff complete; however, hospital staff refused to complete such paperwork and informed Plaintiff that her primary doctor would be the proper person to complete such paperwork. Plaintiff advised Defendants of such.

20. Upon her discharge from the hospital, on or about April 1, 2019, Plaintiff remained off work, pursuant to her doctor's orders that she remain home in order to facilitate her rigorous

schedule of physical therapy, follow-up visits, medical checks and progress exams. Plaintiff advised Defendants of such.

21. On or about April 17, 2019, Plaintiff's doctor released her back to work.

22. On or about April 18, 2019, Plaintiff contacted Defendant's Human Resources Director Kris Hagen, and informed her that her doctor had released her to return to work with restrictions.

23. In response to HR Director Kris Hagen's request for Plaintiff's release paperwork, such was promptly remitted by Plaintiff, via email to Ms. Hagen on or about April 18, 2019.

24. The release paperwork that Plaintiff remitted to the company, by and through its HR Director included temporary restrictions that limited the length and duration of Plaintiff's normal work schedule, such that Plaintiff would need an accommodation that modified her work schedule as she would be limited to working 4 days each week, and 6 hour per day through May 28, 2019. The release paperwork also advised that Plaintiff be allowed to work in a less stressful environment.

25. Based on Plaintiff's personal knowledge as an employee within the company, of Defendant's policies and practices with respect to providing accommodations to disabled employees, if medical information warranting an accommodation was presented to the HR Department, accommodations would routinely be granted. In fact, Plaintiff was aware that one employee was allowed to go out on FMLA, due to her fractured legs, and another employee with a disability was accommodated by the company by being allowed to work from home for 40 hours a week.

26. Defendants were made aware by Plaintiff, that her need for accommodations, pursuant to her doctor's restrictions was temporary, as she told them on May 28, 2019, she would be reevaluated by her doctor.

27. Shortly after Plaintiff remitted her release paperwork to the company's HR Director – Kris Hagen on April 18, 2019, Plaintiff was told that it was unlikely that a temporary

modified schedule would be approved as an accommodation. Plaintiff was also informed by Ms. Hagen that her supervisor would have to be apprised of such requested accommodation and expressly agree to it.

28. On or about April 18, 2019, Plaintiff was eventually informed by HR Director – Kris Hagen, that after she and Plaintiff's supervisor discussed Plaintiff's restrictions and need for a temporary modified work schedule through May 28, 2019, such accommodation was denied because Plaintiff's position with the company was "a very important role in the cruise call center," and a temporary modified work schedule would "impose an undue hardship for the operation of the cruise call center customer service department." Kris Hagen, the company's HR Director, then told Plaintiff that in order to continue working for the company, she needed to be able to work every day - full time. After refusing to even entertain Plaintiff's request for a reasonable accommodation as Defendants routinely did with other employees needing such, Plaintiff was told that she needed to fill out FMLA paperwork.

29. Because the FMLA paperwork included sections that only her primary doctor could complete, on April 18, 2019, Plaintiff informed the HR Director that she would have to schedule an appointment with her primary doctor so that he could complete the FMLA paperwork. She also informed the HR Director that she would have her doctor complete the paperwork as soon as he was able to.

30. Due to her doctor's inaccessibility and busy schedule, which made it virtually impossible for him to complete the paperwork instantaneously, Plaintiff informed the HR Director that she would continue to try and get the FMLA paperwork completed on an expedited basis, and if that proved to be futile, she would remit the forms to HR, no later than immediately following her scheduled appointment on May 28, 2019. In response to this, the HR Director sternly told Plaintiff that she could not return to work without the FMLA papers, and that she had to have the forms completed before her scheduled appointment date, as her appointment date was too far off, and the company would not wait that long. Plaintiff was then told by the company's

HR Director that she was a liability to the company due to her medical condition, and she would be sent an email terminating her employment with the company. All of this contentious communication occurred on April 18, 2019.

31. Later in the day, on April 18, 2019, well before she could even have possibly attempted to contact her primary doctor in effort to have him complete the FMLA paperwork, Plaintiff was terminated by Defendants. The proffered reason for her termination was her absences.

32. At all times while Plaintiff was hospitalized after being incapacitated due to her medical condition caused by her medical condition/narrow carotid artery in the brain, from on or about March 26, 2019, through April 1, 2019, Plaintiff was treated by the company as being on excused, and unpaid leave, as Defendants did not provide their employees with paid sick leave.

33. At all times following Plaintiff's discharge from the hospital on or about April 1, 2019, through the date of her unlawful termination on April 18, 2019, Plaintiff was also treated by the company as being on excused and unpaid leave.

34. At no time between the time of her hospitalization and/or her discharge therefrom, up to the date of her unlawful termination from the company on April 18, 2019, was Plaintiff ever informed by Defendants that she was being penalized with negative attendance points under the company's attendance policy due to her hospitalization and/or post-hospitalization absences from work.

35. At all times up to the time Plaintiff was forced to miss work due to her hospitalization, Plaintiff only had 8.5 negative attendance points, wherein 12 or more negative attendance points resulted in termination from the company, based on Plaintiff's personal knowledge of the company's past practice of enforcing the attendance policy.

36. From the time Plaintiff was hospitalized on or about March 26, 2019, up to and through the time of her unlawful termination, Plaintiffs supervisors became hostile towards her and would refer to her as being "a liability to the company" because she needed an accommodation in the form of a temporary, modified work schedule.

8

37. Plaintiff has been treated differently than similarly situated employees by Defendants with respect to the terms and conditions of her employment because of her disability.

38. Defendants have engaged in illegal discrimination against Plaintiff, because of her disability.

39. Defendants, by terminating Plaintiff for missing work due to her hospitalization and/or medical condition, unlawfully discriminated against Plaintiff based upon her request for accommodation, need for accommodation, disability and/or perceived disability in violation of both federal and Nevada law, which expressly prohibits such discrimination.

## IV.
## FIRST CAUSE OF ACTION

### (Disability Discrimination under the Americans with Disabilities Act)

40. Plaintiff hereby repeats, re-alleges, and incorporates by reference paragraphs 1-39 contained above as though fully set forth herein.

41. After receiving emergency medical treatment related to her becoming incapacitated and hospitalized for several days after having suffered from a sudden, blinding pain in her brain, and eventually being diagnosed with having a narrow carotid artery in her brain, Plaintiff's doctor removed her from work due the seriousness of her life altering medical condition. Defendants were aware of Plaintiff's medical condition.

42. Plaintiff was eventually released back to work with various temporary restrictions that if accommodated, would have allowed her to perform the essential functions of her job as a Customer Service Supervisor. The obligation to accommodate an employee with a disability so he or she can retain their job is a fundamental aspect of the ADA. Employers must be careful to give employees a fair chance to make a full recovery from disability-related conditions and return to productive work when the company can do so without undue hardship.

43. Plaintiff notified her immediate supervisor and Defendant's HR Director of her serious

medical condition, temporary restrictions, and requested accommodation (a temporary, modified work schedule, and work in a less stressful environment), as similar accommodations were provided by Defendants to other similarly situated employees.

44. Immediately upon notifying Defendants of her need for accommodation, Defendants after failing to engage in the interactive process, attempted to force her to apply for FMLA leave, then terminated Plaintiff without providing her with any accommodation and/or allowing her to go out on FMLA leave, when Plaintiff was legally entitled to both a reasonable accommodation and/or FMLA leave.

45. Based upon information and belief, Defendants in whole or in part, terminated Plaintiff's employment based upon her request for accommodation, need for accommodation, disability and/or perceived disability in violation of the ADA.

46. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission.

47. Plaintiff was issued a right to sue letter on **February 5, 2020,** and has timely filed this legal action.

48. Plaintiff suffered consequential and compensatory losses, including but not limited to lost wages, lost benefits, tax penalties, lost earnings, loss of happiness, loss of opportunities, loss of reputation and loss of prestige. As such, Defendants are directly and proximately responsible for Plaintiff's damages in an amount to be proven at trial.

49. Plaintiff has a statutory right to punitive damages because the Defendant's managers and/or agent's actions were willful, knowing and intended to injure or otherwise cause harm to Plaintiff, thereby making their actions and refusal to take corrective measures malicious.

50. Plaintiff has a statutory right to recover all attorney's fees and costs.

10

## V.

## SECOND CAUSE OF ACTION

### (NRS 613.330 Disability Discrimination)

51. Plaintiff hereby repeats, re-alleges, and incorporates by reference paragraphs 1-50 contained above as though fully set forth herein.

52. Defendants, in their above alleged conduct have in addition to discriminating against Plaintiff due to her request for accommodation, need for accommodation, disability and/or perceived disability, have also perpetuated a hostile work environment harming Plaintiff based upon her disability and have unlawfully singled her out for discriminatory conduct in violation of NRS 613.330, *et seq.,*, including but not limited to discharging and/or discriminating against her with respect to her terms, conditions, or privileges of employment on the basis of her disability.

53. As a result of Defendants unlawful conduct, Plaintiff has suffered and will continue to suffer loss of past income and employee benefits, mental anguish, emotional distress, embarrassment and other damages.

54. Plaintiff has a statutory right to punitive damages under NRS §42.005, because the Defendant's managers and/or agent's actions were carried out with fraud, malice and oppression and Defendants willfully, knowingly and intentionally acted in a manner to injure or otherwise cause harm to Plaintiff, thereby making their actions and refusal to take corrective measures malicious.

55. Plaintiff is also entitled to attorney's fees and costs incurred in connection with this claim.

56. As such, Defendants are directly and proximately responsible for Plaintiff's damages in

an amount to be proven at trial.

## VI.
## THIRD CAUSE OF ACTION

**(ADA Retaliation – For Engaging in Protected Activity/Requesting an Accommodation)**

57. Plaintiff hereby repeats, re-alleges, and incorporates by reference paragraphs 1-56 contained above as though fully set forth herein.

58. Plaintiff exercised rights protected by the ADA when she notified Defendants of her disability and requested accommodations for the same (all set forth above).

59. Defendants discharged Plaintiff in retaliation for her exercise, and attempted exercise, of rights protected by the ADA. The actions of Defendants herein, through its agents, servants and employees, in retaliating against Plaintiff for requesting a reasonable accommodation, constituted a violation of the ADA.

60. As a direct result of the aforesaid unlawful retaliatory employment practices engaged in by Defendants in violation of the ADA, Plaintiff sustained permanent and irreparable harm resulting in the termination of her employment, which caused her to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, front pay, and interest due thereon.

61. As a further direct result of the aforesaid unlawful retaliatory employment practices engaged in by Defendants in violation of the ADA, Plaintiff suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

62. Plaintiff has a statutory right to punitive damages because the Defendant's managers and/or agent's actions were willful, knowing and intended to injure or otherwise cause harm to Plaintiff, thereby making their actions and refusal to take corrective measures malicious.

63. Plaintiff is also entitled to attorney's fees and costs incurred in connection with this claim.

64. As such, Defendants are directly and proximately responsible for Plaintiff's damages in an amount to be proven at trial.

## VII.
## FOURTH CAUSE OF ACTION

### (Retaliation Under NRS §613.330 – For Engaging in Protected Activity/Requesting an Accommodation)

65. Plaintiff hereby repeats, re-alleges, and incorporates by reference paragraphs 1-64 contained above as though fully set forth herein.

66. Plaintiff exercised rights protected by NRS §613.330 when she notified Defendants of her disability and requested accommodations for the same (all set forth above).

67. Defendants discharged Plaintiff in retaliation for her exercise, and attempted exercise, of rights protected by NRS §613.330. The actions of Defendants herein, through its agents, servants and employees, in retaliating against Plaintiff for requesting a reasonable accommodation, constituted a violation of NRS §613.330.

68. As a direct result of the aforesaid unlawful retaliatory employment practices engaged in by Defendants in violation of NRS §613.330, Plaintiff sustained permanent and irreparable harm resulting in the termination of her employment, which caused her to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, front pay, and interest due thereon.

69. As a further direct result of the aforesaid unlawful retaliatory employment practices

engaged in by Defendants in violation of NRS §613.330, Plaintiff suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

70. Plaintiff has a statutory right to punitive damages under NRS §42.005, because the Defendant's managers and/or agent's actions were carried out with fraud, malice and oppression and Defendants willfully, knowingly and intentionally acted in a manner to injure or otherwise cause harm to Plaintiff, thereby making their actions and refusal to take corrective measures malicious.

71. Plaintiff is also entitled to attorney's fees and costs incurred in connection with this claim.

72. As such, Defendants are directly and proximately responsible for Plaintiff's damages in an amount to be proven at trial.

## VIII.
## FIFTH CAUSE OF ACTION

### (Violation of the Family Medical Leave Act)

73. Plaintiff hereby repeats, re-alleges, and incorporates by reference paragraphs 1-72 contained above as though fully set forth herein.

74. The FMLA's "Interference Provisions," make it unlawful for an employer to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right provided by the FMLA. In the matter at bar, Defendants, through their unlawful conduct towards Plaintiff, interfered with her rights provided by the FMLA.

75. On March 26, 2019, Plaintiff sought emergency medical treatment and was hospitalized after being incapacitated after having suffered from a sudden, blinding pain in her brain, and eventually being diagnosed with having a narrow carotid artery in her brain. Pursuant to

14

company policy, Plaintiff, by and through her mother immediately notified Defendants via her supervisor and Defendant's HR Director of her serious medical condition.

76. Upon being released back to work by her doctor with temporary restrictions, and after a reasonable accommodation for such temporary restrictions was summarily denied by Defendants, Plaintiff who was apparently deemed eligible for FMLA by Defendants, was directed by Defendants on April 18, 2019, to apply for FMLA leave.

77. Before Plaintiff even had a chance to have such FMLA leave papers completed by her doctor, and well before the 15 calendar day period employers must give employees to return such paperwork, Defendants abruptly terminated Plaintiff's employment.

78. As a result of Defendants unlawful conduct, which directly interfered with Plaintiff's FMLA entitlement rights, Plaintiff has suffered and will continue to suffer loss of past and future income and employee benefits, mental anguish, emotional distress, embarrassment and other damages.

79. Plaintiff has a statutory right to liquidated damages, as Defendant's through their conduct unlawful conduct towards Plaintiff acted in in bad-faith.

80. Plaintiff has a statutory right to recover all attorney's fees and costs.

WHEREFORE, PLAINTIFF RESPECTFULLY PRAYS AS FOLLOWS:

1. For a trial by jury on all appropriate issues.
2. For all employment-related losses subject to proof.
3. For compensation for all expenses incurred to remedy the pain and suffering that was the direct and proximate result of Defendants above-mentioned actions.
4. For compensatory damages in a sum or value to be proven at trial.
5. For prejudgment interest.
6. For reasonable attorney's fees and all costs incurred by Plaintiff Ms. Hall herein; and

15

7.   For such other and further relief as the Court shall deem just and proper.

## IX.
## JURY DEMAND

Plaintiff demands that all issues in this case be tried by a jury in accordance with the Seventh Amendment of the United States Constitution, and pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

DATED this **29th** day of April 2020

By: /s/ F. Travis Buchanan, Esq.
**F. TRAVIS BUCHANAN, ESQ.**
Nevada Bar No. 9371
701 EAST BRIDGER AVE. SUITE 540
Las Vegas, Nevada 89101
Attorneys for Plaintiff

# EXHIBIT – 1

# EXHIBIT - 1

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Emily Hall<br>9681 Meeks Bay Ave<br>Las Vegas, NV 89148 | From: | Las Vegas Local Office<br>333 Las Vegas Blvd South<br>Suite 5560<br>Las Vegas, NV 89101 |
|---|---|---|---|

☐   *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 487-2019-01407 | Brian Gorecki,<br>Investigator | (702) 388-5099 |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☒   More than 180 days have passed since the filing of this charge.

☐   Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒   The EEOC is terminating its processing of this charge.

☐   The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

☐   The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐   The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Patricia A. Kane,
**Acting Local Office Director**

FEB 0 5 2020

*(Date Mailed)*

Enclosures(s)

cc:   Kristin Hagan
Human Resources Manager
**PRESTIGE TRAVEL & CRUISES**
6175 Spring Mountain Rd
Las Vegas, NV 89146